### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES** | **CRIMINAL ACTION NOS. 09-343, 12-118** |
| **v.** | |
| **LEE DAVIS, JR.** | **CIVIL ACTION NO. 14-4681** |

**DuBois, J.**                                                                                         **July 28, 2015**

### M E M O R A N D U M

#### I.        INTRODUCTION

On July 9 and July 17, 2012, *pro se* defendant Lee Davis, Jr. plead guilty, pursuant to a

Plea Agreement, to one count of mail fraud, in violation of 18 U.S.C. § 1341, and one count of

wire fraud, in violation of 18 U.S.C. § 1343.  On November 20, 2012, Davis was sentenced, *inter*

*alia*, to 77 months' imprisonment.  Presently before the Court is Davis' Motion under 28 U.S.C.

§ 2255 to Vacate, Set Aside, or Correct Sentence ("§ 2255 Motion").  For the reasons that

follow, Davis' § 2255 Motion is dismissed and denied without an evidentiary hearing.

#### II.       BACKGROUND

##### a.  Grand Jury Indictments

On May 21, 2009, a Grand Jury in this District returned a six-count Indictment in

Criminal No. 09-343 against Davis, charging him with five counts of wire fraud, in violation of

18 U.S.C. § 1343, and one count of mail fraud, in violation of 18 U.S.C. § 1341.  The charges

arose out of Davis' theft of more than $1 million in insurance premiums from his clients for

surety bonds and workers' compensation insurance.  The case was assigned to this Court.

While awaiting trial, a Grand Jury returned a second Indictment in Criminal Action

No. 11-123, charging Davis with eight additional counts of wire fraud, and three additional

counts of mail fraud, for a second fraud scheme committed by Davis between September 2009 and November 2010.  That case, which was assigned to Judge Juan Sánchez, involved allegations that Davis had made false representations and submitted false documentation to obtain funds from a trust established for his daughter's college education.

Finally, a Grand Jury returned a third Indictment in Criminal No. 12-118, charging Davis with additional counts of wire and mail fraud for a later-discovered fraud scheme executed in late 2011 and 2012.  That scheme involved the theft of a $175,000 fee and an attempt to obtain $74,000 in premiums for a fraudulent performance bond created by Davis.  That case was assigned to Judge Robert F. Kelly.

### b. Defendant's Plea Agreement and Waiver of His Right to Collaterally Attack His Conviction and Sentence

In June 2012, Davis was convicted by a jury of all charges set forth in the case before Judge Sánchez, Criminal No. 11-123.  Davis subsequently entered into a Plea Agreement with the Government resolving the two remaining cases against him, Criminal Nos. 09-343 and 12-118.  Specifically, on July 9, 2012, Davis plead guilty before this Court to one count of wire fraud charged in Criminal No. 09-343, and on July 17, 2012, Davis plead guilty before Judge Kelly to one count of mail fraud charged in Criminal No. 12-118.  All other charges against Davis were to be dismissed at sentencing, pursuant to the Plea Agreement.

As part of the Plea Agreement, Davis agreed to waive his right to appeal and collaterally attack his conviction and sentence, subject to a few narrow exceptions applicable only to the appellate waiver.  Davis' Plea Agreement, in relevant part, stated:

> In exchange for the undertakings made by the government in entering this plea agreement, the defendant voluntarily and expressly waives all rights to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law.

     a. Notwithstanding the waiver provision above, if the government appeals from the sentence, then the defendant may file a direct appeal of his sentence.

     b. If the government does not appeal, then notwithstanding the waiver provision set forth in this paragraph, the defendant may file a direct appeal but may raise only claims that:

         (1) the defendant's sentence on any count of conviction exceeds the statutory maximum for that count as set forth above;

         (2) the sentencing judge erroneously departed upward pursuant to the Sentencing Guidelines; and/or

         (3) the sentencing judge, exercising the Court's discretion pursuant to *United States v. Booker*, 543 U.S. 220 (2005), imposed an unreasonable sentence above the final Sentencing Guideline range determined by the Court.

Guilty Plea Agreement ¶ 11.

### c. Change of Plea Hearings

#### i. July 9, 2012 Change of Plea Hearing in Case Before this Court

At the July 9, 2012 change of plea hearing, the Court engaged in a plea colloquy with Davis pursuant to Federal Rule of Criminal Procedure 11(b).[1] The Court explained the waiver provision of the Plea Agreement as follows: "[A] waiver . . . means a giving up of your right to collaterally attack your conviction or sentence or any other matter relating to your prosecution . . . . a habeas corpus motion [is] a motion filed under 28 United States Code, Section 2255. And the most common form of attack under the habeas corpus statute, is ineffective assistance of counsel." Tr. 7/9/12 at 19:13-17. The Court then engaged in the following colloquy with Davis:

> The Court: Do you understand that when you plead guilty, as you seek to do in this case, you are giving up the right to collaterally attack your sentence or conviction?
>
> The Defendant: Yes, your Honor.
>
> The Court: Do you have any questions about that?
>
> The Defendant: No, your honor.

---

[1] The July 9, 2012 hearing covered Count One of the Indictment in Criminal No. 09-343.

…

> The Court: Thank you. All right, do you understand, Mr. Davis, that by pleading guilty and by waiving the rights I have discussed with you, you cannot later come to any court and claim that you were not guilty or that your rights have been violated?
>
> The Defendant: Yes, sir.
>
> The Court: Do you understand that if you get a longer sentence than you may expect or if you find that prison is worse than you thought, you will be stuck with your guilty plea?
>
> The Defendant: Yes, your honor.

*Id.* at 19:19 – 21:4.

Davis informed the Court that he read and understood the Plea Agreement, *id.* at 21:9-12; that he discussed the Plea Agreement with his counsel, *id.* at 21:14; that he was satisfied with his counsel, *id.* at 9:7; and that he signed the Plea Agreement of his own free will, *id.* at 28:4.  Davis also stated that he understood the essential terms of the Plea Agreement, including the waiver provision, as explained by Assistant United States Attorney Costello at the hearing, *id.* at 23:15, and affirmed that Mr. Costello's explanation of the Plea Agreement was the same as his understanding of the Agreement, *id.* at 19.  Finally, when asked by the Court if he had any questions about the Plea Agreement, Davis stated that he did not.  *Id.* at 23:22.

### ii.  July 17, 2012 Change of Plea Hearing before Judge Kelly

At the July 17, 2012 change of plea hearing, Judge Robert F. Kelly also engaged in a plea colloquy with Davis pursuant to Federal Rule of Criminal Procedure 11(b).[2]  Judge Kelly explained the provision of the Plea Agreement under which defendant waived his right to appeal or collaterally attack his conviction or sentence, stating, in relevant part, as follows: "There is an appellate waiver and do you understand that this will be binding on you, if you — if you enter

---

[2]     The July 17, 2012 hearing covered Count Five of the Indictment in Criminal No. 12-118.

the guilty plea." Tr. 7/17/12 at 9:16-18.  The Court informed Davis, "Normally, after a trial, you

would have the right to file a direct appeal and you could, maybe, get the results changed or a

new trial granted.  But this — this waiver will sharply limit your appellate rights, specifically,

the plea agreement states that: [w]ith very limited exceptions, you give up the right to file any

appeal in this case or any later challenge, such as a *habeas corpus* motion to vacate, set aside or

correct the sentence." *Id.* at 9:10-10:2.  Davis affirmed that he understood.  *Id.* at 10:6.  The

Court then explained the limited exceptions to the waiver, *id.* at 10:3-11:3, and Davis stated that

he understood, *id.* at 11:5.

Davis affirmed that his lawyer explained to him the written Plea Agreement, *id.* at 8:7,

and that he was satisfied with his counsel, *id.* at 5:5.  He also stated that he had signed the Plea

Agreement voluntarily, *id.* at 8:4, and that no one threatened or forced him in any way to enter

into his guilty plea, *id.* at 11:15.  Prior to entering his plea, the Court asked Davis if he had any

additional questions, to which he responded in the negative.  *Id.* at 15:9.

### d.  Sentencing and Direct Appeal

As relevant to Davis' § 2255 Motion, Criminal Nos. 09-342 and 12-118 were

consolidated before this Court for sentencing.  Sentencing was conducted on November 30,

2012. At that time, the Court concluded that Davis' applicable guideline range under the United

States Sentencing Guidelines ("Sentencing Guidelines") was 70 to 87 months' incarceration, Tr.

11/30/12 at 22, and that the statutory maximum was 40 years' imprisonment.  *See* Presentence

Report ¶ 44.

The Court sentenced Davis to concurrent terms of imprisonment of 70 months on Count

One of the Indictment in Criminal No. 09-342, and 77 months on Count Five of the Indictment in

Criminal No. 12-118.  In doing so, the Court stated that the "appropriate total punishment for the

two cases" was 77 months, Tr. 11/30/12 at 88-89. The Court also imposed a term of three years'

supervised release, $1,964,934.15 in restitution, and a $200 special assessment, Tr. 11/30/12 at

90, 95, 100, 103.

On December 6, 2012, Davis filed Notices of Appeal in the Third Circuit in both cases,

and on August 2, 2013, the Third Circuit dismissed the appeals pursuant to Fed. R. App. P. 42(b)

upon Davis' motion.[3]

### e. Defendant's Motion for Writ of Habeas Corpus under 28 U.S.C. § 2255

On August 2, 2014,[4] Davis timely filed a *pro se* Motion to Vacate, Set Aside, or Correct

Sentence By a Person in Federal Custody pursuant to 28 U.S.C. § 2255. In his Motion, Davis

argues that: (1) the judgment amount for Vorhees Township should not have been included in the

restitution amount against him; (2) the Government's failure to charge him in a single indictment

resulted in an unjust sentence; (3) counsel was constitutionally deficient in failing to show

defendant's prior good acts prior to or at sentencing; and (4) the loss and judgment amounts were

---

[3]    Excepting only ineffective assistance of counsel claims, § 2255 movants generally may
not raise new arguments on collateral attack that were not raised on direct appeal. *Hodge v.
United States*, 554 F.3d 372, 379 (3d Cir. 2009); *Massaro v. United States*, 538 U.S. 500, 504
(2003) (concluding that ineffective assistance of counsel claims are exempted from the
procedural default rule). In the present case, the Government has not argued that Davis' first,
second, and fourth claims, which do not involve ineffective assistance of counsel, are
procedurally defaulted. Although it is within the discretion of the Court to raise the issue of
procedural default *sua sponte*, *see Sweger v. Chesney*, 294 F.3d 506, 520 (3d Cir. 2002), the
Court declines to do so in this case because the Court concludes that all of Davis' claims are
meritless. *See* Part III(b), *infra*.

[4]    "The federal 'prisoner mailbox rule' provides that a document is deemed filed on the date
it is given to prison officials for mailing." *Pabon v. Mahanoy*, 654 F.3d 385, 391 (3d Cir. 2011).
Accordingly, the Court deems Davis' § 2255 Motion filed on August 2, 2014, the date Davis
signed it. *Butler v. Walsh*, 846 F. Supp. 2d 324, 329 (E.D. Pa. 2012) (DuBois, J.); *see Hodge v.
Klopotoski*, No. 08-455, 2009 WL 3572262, at *15 (W.D. Pa. Oct. 26, 2009) ("In the absence of
contrary evidence, a court will typically assume that a prisoner presented his or her petition to
prison authorities for filing on the same date that he or she signed it."). Therefore, Davis' § 2255
Motion was timely filed.

incorrect and resulted in a greater sentence and restitution amount.  In response, the Government

argues that: (1) Davis' claims are barred by the collateral attack waiver provision in his Plea

Agreement, and (2) Davis' claims are meritless.  The Court addresses each of the Government's

arguments in turn.

III.    DISCUSSION

a.  Enforcement of the Collateral Attack Waiver

The Government seeks to enforce the collateral attack waiver in Davis' Plea Agreement.

Waivers of the right to collateral review are enforceable "provided that they are entered into

knowingly and voluntarily and their enforcement does not work a miscarriage of justice."

*United States v. Mabry*, 536 F.3d 231, 237 (3d Cir. 2008); *see also United States v. Khattak*, 273

F.3d 557, 563 (3d Cir. 2001).  The Court concludes that Davis' waiver was knowing and

voluntary.  However, the Court does not reach the issue of whether the enforcement of the

waiver as to Davis' ineffective assistance of counsel claims would work a miscarriage of justice

in light of the ethical concerns raised by the waiver of such claims and because Davis'

ineffective assistance of counsel claims are meritless.  This conclusion of the Court leaves open

the question whether the Court will enforce the waiver as to Davis' other claims, which do not

concern ineffective assistance of counsel.  Because the Court concludes that those claims are also

totally without merit, *see* Section III(b) *infra*, it declines to do so.

(i)     Knowing and Voluntary Waiver

Davis does not dispute that he knowingly and voluntarily entered into the collateral attack

waiver.  The Court nonetheless addresses the issue, and concludes that Davis' waiver was

entered into knowingly and voluntarily.

7

The Plea Agreement contained a clear appellate and collateral attack waiver. Guilty Plea Agreement ¶ 11.   Davis stated at his change of plea hearings that he read and understood the Plea Agreement, Tr. 7/9/12 at 21:9; that he signed the Plea Agreement of his own free will, *id.* at 28:4; Tr. 7/17/12 at 8:4; that his lawyer explained the written Plea Agreement to him, Tr. 7/9/12 at 21:14; Tr. 7/17/12 at 8:7; and that he was satisfied with his counsel, Tr. 7/9/12 at 9:7; Tr. 7/17/12 at 5:5.

At the July 9 and July 17, 2012 change of plea hearings, this Court and Judge Kelly explained to Davis that an appellate and collateral attack waiver provision was included in the Plea Agreement and discussed its consequences.   On July 9, 2012, this Court specifically explained that a "waiver . . . means a giving up your right to collaterally attack your conviction or sentence or any other matter relating to your prosecution . . . .," including through the filing of a habeas corpus motion under 28 U.S.C. § 2255.  Tr. 7/9/12 at 19:13-17.  This Court then explained that the most common form of attack under this statute is an ineffective assistance of counsel claim.  *Id.* at 19:17-19.  This Court also reviewed the four narrow exceptions to the waiver.  Davis repeatedly affirmed that he understood this Court's explanation of the waiver, and when asked by this Court, "do you understand that when you plead guilty, as you seek to do in this case, you are giving up the right to collaterally attack your sentence or conviction?"  Tr. 7/9/12 at 19:19, Davis answered, "Yes, your Honor," i*d.*

On July 17, 2012, Judge Kelly informed Davis that the waiver would "sharply limit [his] appellate rights, specifically, the Plea Agreement states that: [w]ith very limited exceptions, [defendant] give[s] up the right to file any appeal in this case or any later challenge, such as a *habeas corpus* motion to vacate, set aside or correct the sentence."  Tr. 7/17/12 at 9:21.  Judge Kelly asked Davis if he understood, and Davis responded affirmatively.  *Id.*  Judge Kelly also

reviewed the narrow exceptions to the waiver with Davis.  Finally, Davis affirmed that no one

had threatened or forced him in any way to enter into his guilty plea, *id.* at 11:15, and that he had

no additional questions with respect to the Plea Agreement, *id.* at 15:9.

      In sum, the record is devoid of any evidence that Davis did not knowingly and voluntarily

waive his right to collaterally attack his conviction, sentence, or any other matter related to the

prosecution of the two cases.  To the contrary, the record demonstrates that the Plea Agreement

contained a clear collateral attack waiver that this Court and Judge Kelly explained to Davis at

the July 9 and July 17, 2012 change of plea hearings, and that Davis confirmed he understood the

waiver.  Therefore, the Court concludes that Davis made a knowing and voluntary decision to

waive his right to collaterally attack his sentences, which he now challenges.

### (ii)      Miscarriage of Justice

      The collateral attack waiver is thus enforceable unless it would result in a miscarriage of

justice.  In *United States v. Khattak*, the Third Circuit expressly declined to "earmark specific

situations" in which enforcing a waiver would amount to a "miscarriage of justice."  273 F.3d at

563.  Instead, the Court adopted the approach used by the First Circuit which identified the

following factors for consideration:  "'[T]he clarity of the error, its gravity, its character (e.g.

whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of

the error on the defendant, the impact of correcting the error on the government, and the extent to

which the defendant acquiesced in the result.'"  *Id.* (quoting *United States v. Teeter*, 257 F.3d

14, 25-26) (1st Cir. 2001).

      The Third Circuit has specifically recognized that enforcing a knowing and voluntary

waiver would work a miscarriage of justice in a few limited circumstances, such as where

"constitutionally deficient lawyering prevented [defendant] from understanding his plea," *United*

*States v. Shedrick*, 493 F.3d 292, 298 (3d Cir. 2007), where defendant should have been

permitted to withdraw his guilty plea, *United States v. Wilson*, 429 F.3d 455, 458 (3d Cir. 2005),

and, where, as is relevant to this case, the waiver itself was the product of alleged ineffective

assistance of counsel, *United States v. Hernandez,* 242 F.3d 110, 114 (3d Cir. 2001).

The Third Circuit has thus far declined to hold that waivers encompassing ineffective

assistance of counsel claims, such as the one in Davis' Plea Agreement, work a miscarriage of

justice.  However, it has recognized the ethical concerns raised by their inclusion in plea

agreements.  *United States v. Grimes*, 739 F.3d 125, 130 (3d Cir. 2014) (acknowledging the

"ethical concerns noted by the National Association of Criminal Defense Lawyers and at least

eight states' legal ethics arbiters").  The Court is similarly troubled by the ethical concerns

presented by such waivers.

Notably, several courts, and numerous state bar ethics committees, including the

Pennsylvania Bar Association ("PBA") Legal Ethics and Professional Responsibility Committee,

have concluded that a criminal defense attorney may not ethically advise a client regarding the

waiver of claims involving defense counsel's own ineffectiveness and that a prosecutor may not

ethically require a defendant to waive such claims.  *Conflicts of Interest and Other Misconduct*

*Related to Waivers of Claims for Ineffective Assistance of Counsel*, Pennsylvania Bar

Association Legal Ethics and Professional Responsibility Committee, Formal Opinion 2014–

100; *see United States v. Deluca*, No. 08–108, 2012 WL 5902555, at * 10 (E. D. Pa. Nov.26,

2012) (discussing state bar ethics committee opinions); *U.S., ex rel. U.S. Attorneys ex rel. E., W.*

*Districts of Kentucky v. Kentucky Bar Ass'n*, 439 S.W.3d 136 (Ky. 2014) (concluding that

advising defendant regarding waiver of ineffective assistance of counsel claims in plea

agreement by defense attorney and seeking inclusion of such a waiver by prosecutor constitutes professional misconduct).

On October 14, 2014, the United States Department of Justice issued a Memorandum to all federal prosecutors instructing that they should no longer seek to have defendants waive their right to bring ineffective assistance claims on direct appeal or on collateral attack as part of plea agreements. *See* Memorandum from James M. Cole, Deputy Attorney General, to All Federal Prosecutors (Oct. 14, 2014), *available at* http://pdfserver.amlaw.com/nlj/DOJ_Ineffective_Assistance_Counsel.pdf. The Court further notes that, after a modification of the waiver provision in 2013, excepting from the waiver claims of ineffective assistance of counsel related to guilty pleas, the U.S. Attorney's Office for the Eastern District of Pennsylvania changed plea agreements so as to exclude from the waiver all ineffective assistance of counsel claims.

Although the Government urges the Court to enforce the waiver in Davis' Plea Agreement as to all of Davis' claims, including his ineffective assistance of counsel claims, the weight of the above-referenced ethics opinions and the change in Department of Justice policy, "gives this Court pause in doing so." *Deluca*, 2012 WL 5902555, at *10 (declining to address whether enforcing similar waiver would result in miscarriage of justice in light of ethical concerns raised in state bar association ethics opinions); *see also Watson v. United States*, 682 F.3d 740, 744 (8th Cir. 2012) (declining to decide whether waiver which expressly encompassed ineffective assistance claims would be enforceable in light of ethics opinions where issue had not been addressed by the parties). Moreover, the Court does not address the "miscarriage of justice" issue because, even assuming *arguendo* that Davis' collateral review waiver is unenforceable, the Court concludes that *all* of Davis' claims, including those that involve

11

ineffective assistance of counsel claims, and those that do not, lack merit.  Thus, Davis' § 2255

Motion is dismissed and denied on that ground.

### b.  Defendant's Claims Are Without Merit

The Court addresses each of Davis' claims in turn. As Davis' first and fourth claims are

related, the Court considers them together.

### i.  Claims One and Four: Loss and Judgment Amounts Were Incorrect

Davis argues that the amount of the Vorhees Township judgment should not have been

included in his restitution amount because he did not enter into a contract with Vorhees

Township.  Davis also contends that, prior to sentencing, there were "policies written and claims

paid," that if considered by the Court, could have resulted in a lesser sentence and reduced or

eliminated the restitution amount.  To the extent that Davis challenges the restitution amount,

Davis' first and fourth claims are dismissed, as challenges to restitution are not cognizable under

28 U.S.C. § 2255. *See, e.g., United States v. Robinson*, 331 Fed. App'x 907, 908 (3d Cir. 2009)

("[A]n inmate may not challenge the imposition of restitution in a motion to vacate sentence

under 28 U.S.C. § 2255.").  To the extent that Davis challenges his sentence, he provides no

factual or legal support for his assertions.  *See Mayberry v. Petsock*, 821 F.2d 179, 185 (3d Cir.

1987) ("[B]ald assertions and conclusory allegations do not afford a sufficient ground for an

evidentiary hearing.").[5]  Therefore, the Court denies Davis' claims on the merits.

---

[5]      With respect to his fourth claim, Davis asserts that "[i]f counsel was better prepared, both
the loss amount and judgement [sic] amounts would have been significantly lower or even
eliminated entirely." (Def.'s  2255 Mot. 10.)  To the extent that Davis argues ineffective
assistance of counsel with respect to claim four, the claim must still fail as vague and without
factual or legal support.  *See Zettlemoyer v. Fulcomer*, 923 F.2d 284, 298 (3d Cir. 1991) (holding
that § 2255 petitioner could not meet his burden of proving ineffective assistance of counsel
"based on vague and conclusory allegations").

### ii. Claim Two: Government's Failure to Charge Defendant in a Single Indictment

Davis asserts that he was improperly charged in three separate indictments rather than in a single indictment. The Court rejects this argument. At the outset, the Court notes that "[t]here is no rule requiring compulsory joinder of charges arising out of the same transaction." *United States v. Miller*, 259 F. Supp. 294, 297 (E.D. Pa. 1966).

In any event, the indictments at issue charged Davis with three separate fraudulent schemes, which occurred during distinct periods of time. *See* Tr. 11/30/12 at 19-20. While the Government was preparing for trial in Davis' first case, it found out that he "stole from his daughter's trust fund," so it prepared a separate indictment (Indictment No. 11-123) for this crime. *Id.* at 24. Then, a year later, the Government indicted Davis again in Criminal No. 12-118, after it was revealed that he sold a false surety bond to a customer. *Id.* Davis' second scheme to defraud, of which he was convicted by a jury, was carried out between September 2009 and November 2010. The conduct charged in Count One of Criminal No. 09-343 occurred from June 2003 to January 2009, and the conduct charged in Count Five of Criminal No. 12-118 occurred on January 25, 2012. Even though Davis' crimes were similar, they were distinct. [6]

---

[6] Davis cites two cases in support of his claim that Court concludes are inapposite. In *United States v. Weathers*, defendant argued that the indictment charged the same offense in more than one count of the indictment, a problem known as "multiplicity." 186 F.3d 948, 951 (D.C. Cir. 1999). Davis makes no such challenge in this case, and, as previously discussed, Davis was properly charged with distinct offenses in each Indictment. Davis' general reliance on *United States v. Fumo*, No. 06-cr-319 (E.D. Pa. filed June 27, 2006), in which defendant was convicted of, *inter alia*, various counts of fraud, is also misplaced. The fact that a different defendant in another case involving a different set of facts was charged with a similar crime, but received a lesser sentence, does not render Davis' within-Guidelines range sentence unreasonable. *See United States v. Kuchler*, 285 F. App'x 866, 869 (3d Cir. 2008) ("[Defendant] cannot rely on 18 U.S.C. § 3553(a)(6) to contend that his sentence was unreasonable because a different district court, confronted with a different defendant in a different case with a different set of facts, decided to impose a different sentence.").

Thus, Davis' argument that the Government erred in charging him in three separate indictments fails.

### iii.   Claim Three: Ineffective Assistance of Counsel

Finally, Davis argues that his counsel was constitutionally ineffective in failing to show his prior good acts prior to or at sentencing, including his donations to charities, such as Purple Heart, his involvement in coaching young boys and girls baseball and basketball teams, and his involvement with the Boy and Cub Scouts.

The standard for evaluating an ineffective assistance of counsel claim was set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).  To establish ineffective assistance of counsel, a defendant must demonstrate that his counsel's performance (1) "fell below an objective standard of reasonableness" under "prevailing professional norms," and (2) that counsel's deficient performance prejudiced the defendant.  *Id.* at 687-88, 922.

When assessing the reasonableness of counsel's performance, the *Strickland* Court noted that "the difficulties inherent in making the evaluation" necessitate that courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  To show prejudice, a petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  A "reasonable probability" is a "probability sufficient to undermine confidence in the outcome." *Id.*

The Court rejects Davis' claim that counsel was ineffective by failing to show certain prior good acts prior to or at sentencing.  Contrary to Davis' assertions, almost all of the positive endeavors he cites in his Motion were in fact presented to the Court prior to sentencing.  *See* Letter of Lauren Davis-Ryan (defendant coached his son's basketball and baseball teams,

14

assisted in his Boy Scout troop, and mentored one of his son's Boy Scout friends); Defendant's

Sentencing Memorandum at 1 (defendant "wholeheartedly participated in [his children's

education and activities]"), PSR, ¶ 76 (defendant was a coach on his son's baseball team); Letter

of Mason Davis (defendant always attended Boy Scout camping trips and helped out coaches on

his baseball team).  The only specific prior good acts that do not appear to be in the record are

Davis' donations to charity.  Trial counsel's failure to present this evidence, without more, does

not render her performance constitutionally deficient in light of the extensive mitigating evidence

that was presented.[7]  A close review of the record reveals that Davis' counsel submitted a

comprehensive sentencing memorandum and zealously advocated for Davis at the November 30,

2012 sentencing hearing.  Specifically, counsel presented the testimony of Dr. Catherine Barber,

Ph.D. in support of her argument that Davis' difficult family history and mental health issues

contributed to his criminal conduct, and that he should consequently receive a below-Guidelines

range sentence.  (Def.'s Sentencing Mem. 5; Tr. 11/30/12 at 34-52.)

Davis has also failed to demonstrate prejudice.  The fact that counsel did not present

evidence of Davis' charity donations does not undermine the Court's confidence in the imposed

sentence in light of the serious impact of Davis' crimes on his victims, and the extensive

mitigating evidence actually presented, including, *inter alia*, evidence with respect to his

troubled family history, mental health issues, prior community engagement, and strong family

---

[7]     The Court further notes that the two cases that Davis cites in support of his claim are
inapposite. In *United States v. Gordon*, defendant alleged that his counsel failed to disclose or
discuss the Presentence Report ("PSR") with him, and as a result, he missed factual inaccuracies
in the report that may have lessened his sentence. 172 F.3d 753, 756 (10th Cir. 1999). In this
case, there are no allegations that Davis' counsel failed to disclose or discuss the PSR with him.
In *United States v. Davenport,* defendant alleged that he did not have enough time to review his
PSR. 151 F.3d 1325 (11th Cir. 1998).  Davis makes no such assertion in this case.  Moreover, the
record reveals that, at the sentencing hearing, Davis affirmed to the Court that he read the PSR,
discussed it with his attorney, and understood it.  Tr. 11/30/12 at 3.

ties.  *See Porter v. McCollum*, 558 U.S. 30, 41 (2009); *Strickland*, 466 U.S. at 699 (no prejudice shown where "[t]he evidence that respondent says his trial counsel should have offered at the sentencing hearing would barely have altered the sentencing profile presented to the sentencing judge").  Thus, Davis' ineffective assistance of counsel claim fails.

### c.  An Evidentiary Hearing Will Not Be Held

Under § 2255, "the question of whether to order a hearing is committed to the sound discretion of the district court."  *Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989). In exercising that discretion, "the [C]ourt must order an evidentiary hearing to determine the facts unless the motion and files and records of the case show conclusively that the movant is not entitled to relief."  *Id.*; *see also United States v. Day,* 969 F.2d 39, 41–42 (3d Cir. 1992).  The Court concludes that there is no need for an evidentiary hearing because the record conclusively establishes that Davis is not entitled to the relief sought in his § 2255 Motion.

### d.  A Certificate Of Appealability Will Not Issue

A certificate of appealability will not issue because reasonable jurists would not debate (a) this Court's decision that Davis' Motion does not state a valid claim of the denial of a constitutional right, or (b) the propriety of this Court's procedural rulings with respect to Davis' claims. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Morris v. Horn*, 187 F.3d 333, 340 (3d Cir. 1999); 28 U.S.C. § 2253(c).

### IV.    CONCLUSION

For the foregoing reasons, Davis' Motion to Set Aside, Vacate, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 is dismissed and denied without an evidentiary hearing.